DAN M. LEE, Presiding Justice,
dissenting:
The actions of Boyd P. Atkinson, considered in the case sub judice, present a unique situation. Here, Atkinson first functioned in a judicial capacity, as a municipal court judge, pro tempore, giving official approval to a bond in an amount that was mutually agreed upon between the prosecutor and the defense counsel for an accused, Leonard Gibbs. Subsequently, after leaving his pro tempore judgeship with respect to Gibbs’ ease and resuming his private practice as an attorney, Atkinson was retained as counsel and acted as an attorney for Gibbs, in an effort to obtain a reduction in the bond amount, in a different court, the Circuit Court of the Second Judicial District of Bolivar County.
Because the majority finds that Boyd P, Atkinson acted with willful misconduct in office, in a manner that was prejudicial to the proper administration of justice, and because the majority finds that Atkinson substantially participated in the proceedings of Leonard Gibbs’ criminal case by temporarily presiding as a municipal court judge over Gibbs’ preliminary hearing, during which he did not make any rulings on the merits of the case, I respectfully dissent.
I.
In imposing a judicial sanction for misconduct as a judge, the majority of this Court and the Mississippi Commission on Judicial Performance (“Commission”) erroneously attribute Atkinson’s conduct, while functioning as an attorney for Gibbs, as that of a judge acting as an attorney.
The “AGREED STATEMENT OF FACTS,” signed by a representative of the Commission and by Atkinson, stated inter alia, that:
After the preliminary hearing, Deborah F. Davis approached Clarence Green of Rhodes Bonding Company about getting Gibb’s bond lowered; through Mr. Green, Ms. Davis employed the Respondent [Atkinson] for this purpose. Thereafter, the Respondent [Atkinson], in his capacity as an attorney engaged in the private prac *1338 tice of law, filed a Petition for Bond Reduction ... in the Circuit Court of the Second Judicial District of Bolivar County, Mississippi.
(emphasis added). Therefore, it was agreed as fact that Atkinson acted as an attorney, not as a judge, in representing Gibbs. To find the contrary, as the majority does, ignores the express language of the facts agreed upon by the Commission, and also disregards the pro tempore nature of Atkinson’s judgeship.
Unlike judges who serve full-time, a person acting as a judge pro tempore is clothed with judicial authority only while actually serving pro tempore. Once he surrenders his pro tempore status, that person is no longer considered to possess judicial authority or to represent the judiciary. While serving in the pro tempore status as a judge, a person is subject to imposition of a judicial sanction for violation of the Code of Judicial Conduct. But, once the pro tempore judge returns to private practice as an attorney, he is appropriately subject to attorney discipline if he violates any of the Mississippi Rules of Professional Conduct, not a judicial sanction for violation of the Mississippi Rules of Professional Conduct. Nevertheless, the majority seeks to utilize a violation of Rule 1.12(a) of the Mississippi Rules of Professional Conduct, subjecting one to attorney sanctions, and Opinion No. 133 of the Mississippi State Bar, as justification to impose a judicial sanction upon Atkinson.
Rule 1.12(a) of the Mississippi Rules of Professional Conduct, is captioned and reads as follows:
RULE 1.12 FORMER JUDGE OR ARBITRATOR
(a) Except as stated in paragraph (d), a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer, arbitrator or law clerk to such a person, [emphasis added]
The language of that rule clearly regulates the conduct of one presently functioning as a lawyer, but who previously acted as a judge, adjudicative officer, arbitrator, or law clerk. It does not govern the conduct of a judge, but regardless, a violation of the rule does not subject the attorney to a judicial sanction, only an attorney sanction.
Rule 1.12(a) simply does not support imposition of a judicial sanction. Neither does Opinion No. 133 of the Mississippi State Bar have any bearing on the determination to impose a judicial sanction for actions by an attorney, acting as an attorney. The Code of Judicial Conduct governs and applies to persons performing judicial functions, and a violation of those rules must exist before a judge is properly subjected to judicial sanctions. But, it is uncontroverted that, in the case sub judice, whenever Atkinson represented Gibbs in circuit court, he did so as an attorney, not as a judge. A fortiori, his actions might arguably subject him to sanctions against him as an attorney for violation of Rule 1.12(a) of the Mississippi Rules of Professional Conduct, but that alleged violation does not substitute for a finding of a violation of the Code of Judicial Conduct.
If arguendo, Rule 1.12(a) did have application in the case sub judice, then whether Atkinson “substantially participated” in the adjudication of Gibbs’ case would be an issue for consideration. The Commission found that “a Judge who establishes a bond for a criminal defendant has acted in a substantial way in the judicial process.” But, that finding is not supported by our prior cases, and a proper interpretation of the rule indicates that Atkinson did not “substantially participate” as a judge in Gibbs’ case.
A fair reading of the Comment to Rule 1.12 indicates: 1) that the term “substantial participation” connotes actions by a judge which “affect the merits” of the case; and 2) Rule 1.12 explicitly applies to lawyers who function as judges pro tempore or part-time judge. That Comment states as follows:
This rule generally parallels Rule 1.11. The term “personally and substantially” signifies that a judge who was a member of a multimember court and thereafter left judicial office to practice law, is not prohibited from representing a client in a matter pending in that court, but in which the former judge did not participate. So also *1339 the fact that a former judge exercised administrative responsibility in a court does not prevent the former judge from acting as a lawyer in a matter where the judge had previously exercised remote or incidental administrative responsibility that did not affect the merits.... The term “adjudicative officer” includes such officials as judges pro tempore, referees, special masters, hearing officers and other parajudicial officers, and also lawyers who serve as part-time judges.
I submit that Atkinson’s action, while functioning as a judge pro tempore, officially approving the bond amount of $40,000.00 which had been mutually agreed upon between the prosecutor and Gibbs’ defense counsel, did not affect the merits of Gibbs’ case. Furthermore, accepting a mutually agreed upon bond amount at a preliminary hearing pales in comparison to the other judicial duties which run the gambut from rendering a decision in a case, to ruling on motions. There simply are not many other judicial duties which exist that are less substantial in nature than accepting a mutually agreed upon bond amount. Therefore, according to the language and the spirit of the Comment to Rule 1.12, Atkinson did not “substantially participate” in Gibbs’ criminal trial.
II.
The majority, adopting the Commission’s findings, determined that Atkinson’s actions constituted “willful misconduct in office.” However, the finding of “willful misconduct” on the part of Atkinson is not supported by the authority relied upon by the majority.
The majority quotes the definition of “willful misconduct in office” which this Court has adopted. But, the majority disregards the qualifying language of that definition which follows:
Willful misconduct in office is the improper or wrongful use of the power of his office by a judge acting intentionally, or with gross unconcern for his conduct, and generally in bad faith. It involves more than an error of judgment or a mere lack of diligence. Necessarily, the term would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive.
In re Anderson, 412 So.2d 743, 745 (Miss. 1982) (quoting In re Nowell, 293 N.C. 235, 237 S.E.2d 246, 255 (1977) — (emphasis added)).
The Commission expressly found that there was no moral turpitude on the part of Atkinson. Nor was there a finding of dishonesty or corruption. Furthermore, it is quite clear that Atkinson did not use his judge pro tempore status as a means to pursue legal representation of Gibbs. On the contrary, Atkinson’s services were sought after; he did not solicit representation of Gibbs in any manner.
The majority also adopted the Commission’s finding that Atkinson’s actions constituted “conduct prejudicial to the administration of justice which brings the judicial office into disrepute.” Once again, the majority correctly states our standard, but disregards its express language.
This Court previously announced the correct standard for measuring “conduct prejudicial to the administration of justice which brings the judicial office into disrepute.” There, we stated that:
There is no simple, black-letter definition of conduct prejudicial to the administration of justice which brings the judicial office into disrepute. The Maryland Supreme Court, in In re Diener and Broccolino, 268 Md. 659, 304 A.2d 587 (1973), cert. denied, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974) said:
Precisely what “conduct prejudicial to the proper administration of justice” is or may be, in any or all circumstances, we shall not undertake to say. Indeed, a comprehensive, universal definition may never evolve but it is unlikely we shall ever have much trouble recognizing and identifying such conduct whenever the constituent facts are presented.
304 A.2d at 594.
In re Inquiry Concerning Baker, 535 So.2d 47, 50 (Miss.1988) (emphasis added).
*1340 Unlike the majority, I cannot unequivocally say that I do not have trouble recognizing and identifying conduct by Atkinson that was prejudicial to the administration of justice, in Gibbs’ case or in any other.
III.
The foregoing leaves but one conclusion. Atkinson did not “substantially participate” in the judicial proceedings of Gibbs’ criminal case, and his actions did not constitute “willful misconduct in office” or “conduct prejudicial to the proper administration of justice that brings the judicial office into disrepute.” At most, Atkinson’s actions represented an error in .judgment.
As we stated in a past decision of this Court:
The Commission found that Judge Baker’s conduct fails to conform to the high standard required of a judge and did not uphold the integrity and independence of the judiciary but rather created an appearance of impropriety. While not disputing the Commission’s position, we note that: “not every failure of a judge to conform to the standards of the Code amounts to judicial misconduct or merits formal discipline.” Matter of Alvino, 100 N.J. 92, 494 A.2d 1014 at 1016 (1985).
We further note that:
While judges are held to the very highest of standards of performance in this state, they are not infallible. It was never intended that each and every failure to conform to the standards of the Code would lead to judicial discipline. Id.
In re Inquiry Concerning Baker, 535 So.2d 47, 50 (Miss.1988) (emphasis added).
I respectfully dissent.